191104 TLS Mgmt. and Mktg. Ser. LLC v. Rodriguez-Toledo 19114 I just want to go back to the waiver point because I understand their one argument against your position on this, one of their arguments is that if you're now arguing that the Trade Secrets Act in Puerto Rico required more specificity than they gave, which I can understand why you would read it to have done so, that argument about that requirement being in the Trade Secrets Act of Puerto Rico was never raised to the district court. So what's your response to that? The response is that it was specifically raised in the motion for summary judgment. It is specifically citing all the cases in the 5th, the 7th, the 8th, and the 9th Circuit that specifically say that trade secrets need to be identified. This was brought to the court's attention and the court did not agree with us. To put two final points on it, none of those cases are interpreting the Trade Secrets Act of Puerto Rico. Yes. So I think their point is, do you have a response to the argument? Why isn't it a problem that you were not making an argument? What were you relying on as the basis for concluding that there was some requirement to be more specific? The requirement is laid out in the law. But you didn't cite that. The law cannot be waived. But I think their argument is that you didn't make an argument to the district court that the statute, the Puerto Rico statute had that requirement in it. Yes, but they had to comply with the law regardless. TLS may not waive the requirements under the law. They had to comply with each of them. And the first one was identification of the trade secret. Well, wait a minute. Let me understand here because I think there are two separate points that are getting confused. One is whether they had to comply with the timing requirement of the Puerto Rican Act. And maybe on that one you waived it. But there's still a general principle that you have to identify trade secrets in your proof in order to recover. And they never did that here. They never did that here, Your Honor. And that's why we went and learned in the middle of trial for the first time that TLS had a trade secret in another division where our client didn't even work. So not only that. I'm trying to locate. I don't disagree that it would seem that you would have to specify what the secret is that you're contending was impermissibly disclosed. And I can see why you're concerned that there was never such an identification here. Doesn't that requirement have to come from the Puerto Rico trade secret law itself in this case or is there some other source of it? What are you saying? Where would it be located if not that requirement, if not in that act? Well, I would submit that the law requires it. What does that mean, the law? What law? The trade secret act requires it. I would say also that as a common due process issue, if you're charged with misappropriation, you need to know. So from your perspective, you made the district court perfectly clear by the cases you cited that there's no way a suit could go forward under this law without more identification. Oh, yes. There's also a general principle about that. So, counsel, what was the district court doing making all these findings? I mean, the court seemed to understand what was in dispute. The court seemed to understand what the plaintiffs were contending were trade secrets. It then made findings describing those trade secrets. So this notion that it just seems very odd that the court would make all these findings without having any understanding of what the plaintiffs were asserting were the trade secrets at issue. What was all that about? Well, the TLS described for the first time there something, CPR, that we had never heard of, so we had no way to defend as to some new trade secret that popped out in the middle of trial. And then as to the strategy, we had to guess that because my client worked in the division that deals with the strategy, that they were probably going to claim that. And so what did the court do? The court said, oh, you provided services to two TLS clients, so you use your knowledge about the strategy to provide them those services. You couldn't do that. That was the court's conclusion. You couldn't do that. Why? There is no noncompete agreement. So did you file an initial motion to dismiss? Is that right? No, I did not. Well, we did file motions to dismiss as to the federal claims. When did you first, and in what context did you first make the argument to the district court about the lack of specificity being a basis for you winning? I first asked for discovery orders to try to get more specifics about the trade secret, and they were denied. And then on summary judgment, after TLS principals openly said they didn't know what their trade secrets are, then we filed again a motion for summary judgment bringing that up under testimony. It's clear. They don't know what it is. If they don't know it, my client doesn't. And then that was denied, and then only after that trial was the first time, in your view, that it became clear what they were talking about. Yes. And then your view is the district court's findings that we have before us are all based on the evidence that came out at trial? I'm sorry. Judge Lopez's question is the district court seemed to have figured out what was being claimed to be the trade secrets and made a whole bunch of findings about it. You, in response, seemed to know what it's talking about at that point in your briefing to us and engage with those. The district court, at that point, when it was able to identify what was the trade secret, you're saying that's based on evidence that first appeared at trial four days in? Yes. The district court made those findings when suddenly, by instant illumination by TLS, they decided at trial that the U.S. Possession Strategy and that the CPR are trade secrets. Why couldn't they tell me that in discovery when I was sitting in front of them and I asked them, what are your trade secrets? We didn't know. We didn't know. Well, I thought there were, predictably, there were a lot of depositions taken before trial, right? Two depositions. I'm sorry? Two depositions to the two TLS principles. Okay. But so those depositions include executives of TLS, and those executives seem to be describing what they view the trade secrets are at stake. I mean, don't those depositions include discussions of the CPR and the strategy, as it's called? My understanding is, is it Mr. Kolombiak, Kolombiak, I believe? Kolombiak. Thank you. In his depositions, he seems to be describing those documents as what's of concern to them, describes them as trade secrets, describes why they are trade secrets, describes all the time and effort that goes into their creation, describes how much business is generated by them, describes all the steps they've taken to preserve the secrecy. So I'm trying to figure out why you're now saying, in light of those depositions, it's only at trial that you understand for the first time what the trade secrets are. Because in the depositions, they said they didn't know what their trade secrets were. They said that for them, everything that is included in the definition of confidential information is for them confidential. And whether it's a trade secret or not, it's for the lawyers to say. Therefore, I asked them, so what is the process that you think is confidential? What is the method you think is confidential? What is the system you think is confidential? And all they could say is, well, we interview clients, we gather their information, we sit and make an analysis, and then we come up with a report. That sounds like what I do every day in my office, and it's not a trade secret. When I asked Mr. Kolumbic exactly the same question, what is the specific trade secret you have, he said, yes, we send forms to the client and they fill them up, and then we make an analysis, and then we prepare a report giving them recommendations. By that point, you at least know it's the two, what's it called, the CPR and the... The CPR was never mentioned. We didn't know, and Mr. Rodriguez didn't work in that division. That's not mentioned in the deposition? No, never. And Mr. Rodriguez didn't work in Mr. Kolumbic's consulting division. So how could we know that a document that he never even... The only thing this guy did was... Well, I just want to say why you didn't move to dismiss just based on the complaint. Because they alleged in the complaint that TLS trade secrets were the confidential information. So what we did was try to figure out more specifically in discovery what confidential information, but then they couldn't. Their answer was everything, everything, 26 gigabytes of information in the USB that the court has before it as evidence for TLS. All of it is confidential information slash trade secrets. Something I don't understand as well. I guess there's a lot we don't understand about this case, but when you get to the preliminary injunction, you actually get to the order that the court enters. There's not any reference to trade secrets at all. It's pitched entirely in terms of confidential information. But in light of the misuse, the court's findings of your client by all this confidential information, the preliminary injunction issues, it seems like it really... The focus was very much on what TLS viewed as confidential information that was being misused and that the Trade Secret Act is secondary to the larger issue of confidential information. Is that a fair reading of what the district court was doing when it entered that preliminary injunction? It's all about, at the end, it's all about confidential information that your client misused. No reference at all to trade secret violations. The preliminary injunction was based on the breach of contract, not on the trade secret. The court then, after trial, decided, oh, and also, these two are going to be trade secrets. So now we have that a court declares trade secrets because the employer didn't know they were trade secrets and they never gave any notice to the employee that they were trade secrets. So the preliminary injunction proceedings were all about confidential information. Yes, they were based on an argument that confidential information was defined as cost, processes, and that when Mr. Rodriguez discussed the communications that TLS clients sent him, that in discussing them, that was confidential information of TLS. Okay. You never moved once the federal claim was out of this case, even though you wanted, even though you thought the state law questions were novel and. . . No, no, that's not. What happened was that the wiretap was federal act and it was dismissed after trial. So the court still had to decide on the wiretap act. So we went to trial on the federal issue of wiretapping, and then we went to trial on the supplemental issues regarding the Puerto Rico trade secret and the breach of contract. The case then got the federal cause of action got dismissed. So the court ended up. . . I did ask for her to be. . . Went after trial? No, no. I asked for. . . Yes, after summary judgment was denied. But at that point the federal claim was still in the case? There was one federal. . . Yeah, the wiretap act was all the way, yeah, in federal court. It was still alive. Any other questions, Your Honor? No. Your Honor, good afternoon. My name is Manuel Pietrantoni, and may it please the Court, I represent TLS Management and Marketing Services, LC. So a document can't be a trade secret. What are the trade secrets here? I'm not talking about when they were disclosed. I'm saying at the end of the day when the record is closed, what are the trade secrets? Yes, Judge Dyke, and I think that the district court was very careful in making a narrow holding that specifies what the trade secrets were. Let me start by the conclusion. The trade secrets are the capital preservation report and what TLS. . . A report can't be a trade secret. There has to be a specific thing which satisfies the definition of a trade secret. What is it here? What the district court held, and I think correctly, is that with respect to the capital preservation report, the secret use that TLS gives to certain information, to regulations, to laws, and the analysis that it makes with respect to that. . . What information? What laws? What plan? You can't just have a general description that way that would qualify as a trade secret. It has to be something specific. What is it? Well, what the district court said was that the process that TLS uses to compile all the information, which includes analysis and advice to its clients, and the end result is the capital preservation report, that the secret use and the process it follows, that in itself is the trade secret. That just seems, the way you describe it, that just seems like it's the application of generally known law to the specific facts brought forth by a client. I don't understand how that professional, by accountants and lawyers, the application of generally known law to the specific facts brought forth in the case, all to the end of trying to limit tax liability, how that can be a trade secret. I just don't understand that. Yes, Judge Lopez, what the district court said, and I think that it followed Milgram on trade secrets and also the SI handling case out of the Third Circuit. We also cited the Tanaka case for this very issue, and what the district court said was with respect to the capital preservation report, it said information contained within the capital preservation report or information, I strike that not within, information used to prepare the capital preservation report and the underlying documents used in the U.S. Possession Strategy. That by itself is not a trade secret. What it becomes a trade secret is by the very use that TLS gives it, the process that it uses, and the end result. That is a trade secret, and that is supported by these cases that the court. Why is the trade secret? What's the trade secret? The trade secret is the district court did find that the trade secret was the end result, which is the capital preservation report. Your Honor, in fact, the. . . What case says that a report like that can be a trade secret? Well, Your Honor, I submit, and I think it's the Tanaka case that we cited in our brief, included as or decided that a trade secret, that certain practices and. . . The word is escaping me, but practices, best practices and usages by an insurance company in one of its manuals, that was a trade secret, and I think that is akin to the capital preservation report here. It's a specific thing. It has to be a specific thing. This is the particular process. This is the particular approach. This is the way we do it. It's specific. That becomes a trade secret. And it can be tested by the definition of a trade secret, whether it can be ascertained from other sources and so on and so forth. If you present the trade secret as just a mush, you know, you defeat the whole purpose of the Trade Secrets Act. I'm not aware of any case that says that that kind of mush can constitute a trade secret. Well, and I think that, to your point, Mr. Columbic testified at trial regarding the process that TLS uses to compile that, to use your word, just like mush, and the district court found that that process was, in fact, the trade secret. What's that process? Is that reading the tax laws? Well, no. But it includes, of course, reading the tax laws, the analysis that goes into it, interpreting the different circumstances and specific clients. It just sounds, even from the way you're describing it, it would be hard to describe this as a heartland trade secret case, right? I apologize, Your Honor. I don't know what you mean by heartland trade secret. A clear one. Clearly a trade secret. It is. I think it is a trade secret case. It's not the standard circumstance. Well, I agree. Okay. So we have an act that's a Puerto Rico law act, and a federal court not sitting in diversity is construing a question of first impression with a novel interpretation for which we're having trouble finding any precedent in any trade secrets laws anywhere that mimic it. And I just don't fully understand, what is the sense in the federal court being the one to give such a novel interpretation other than federal law rather than either certifying or, as a lot of our cases suggest, once the federal claim drops out of the case, exercising discretion to just dismiss the state law claims and let the local courts resolve what the meaning of their own laws are. Right. Well, I would submit, Your Honor, that the district court case is in the same position as a Puerto Rico state court case would be to analyze and apply the Puerto Rico Trade Secret Act. The reality is that... Except for the fact that it can't finally determine what it means, whereas the Puerto Rico Supreme Court can. Well, I would agree with your proposition, Your Honor. I think that that is not the issue here, because my point is that the district court is in the same position as any trial court in Puerto Rico would be to apply the statute. The statute is clear on its face. We're not in the same position as the appellate court in Puerto Rico would be, let alone the Supreme Court of the United States, not in the same position as the Puerto Rico Supreme Court is as to the meaning of the Trade Secret Act. And that's the effect of having it resolved in the federal system rather than having it resolved in the local courts in Puerto Rico. Yes, Your Honor. I agree, again, with His Honor's statement, Judge Barron. But I do think that that is, just as in other cases where the state court has not necessarily defined an issue or tackled an issue, the federal court does not need to certify it. If it can reasonably assume how these Puerto Rico, in this case the Puerto Rico Supreme Court, would decide the issue, I think this is such a case. Counsel, there's nothing, really nothing unique about the Puerto Rico Trade Secrets Act. It's a uniform act adopted in most states. Isn't that correct? That is correct, Your Honor. So to the extent that, as Judge Dyck is suggesting, it's very hard to find any trade secrets case, and there would be many among the many states that would treat what we have here as a trade secret. That's pretty significant. You can't defend it in terms of the uniqueness of the Puerto Rico statute. Isn't that true? That is true, Your Honor. And just to your point, and this goes back to the certification issue that Judge Barron was mentioning, the Puerto Rico Trade Secret Act is based on the uniform trade secret act that I believe most of the states used or have used to enact their own trade secret acts. But I do think that the district court made a well-reasoned, factually detailed, thorough opinion with respect to the trade secrets. And just to put this in perspective, and I think I hope I address Judge Dyck's concern with respect to the trade secrets at bar. The reality is, and I think this will also address some of the comments made by Ms. Ramos earlier, the reality is that, in this case, TLS claimed that all of its confidential information that the appellants had misappropriated were its trade secrets. Incorrectly so. Yes, Your Honor. Incorrectly so. I'm far away from that still. Yes. But my point is that the district court was very careful to reject most of that, except for the Capital Preservation Report issue and the U.S. Possession Strategy issue. I should also note, going back to both the Capital Preservation Report and the U.S. Possession Strategy, the district court was very careful in saying, I am not holding that the underlying documents or the information used to create this strategy and this report are trade secrets. What I'm saying is that the secret use given to that information, given to the underlying documents, that is the trade secret that warrants protection. And that is, I think, supported by the fact that there was no evidence that any other entity in Puerto Rico, or has been offering these two trade secrets that TLS offers. Let me ask you a question. In Puerto Rico, presumably there are other uniform acts which have been adopted by the state legislature. Is there law in the Puerto Rico Supreme Court about the interpretive process that's going to be given to these uniform acts in Puerto Rico? Are they going to look to law elsewhere in interpreting them? Yes, Your Honor. And I apologize because I can't think of a specific statute that I could mention for the court, but I can say that the Supreme Court of Puerto Rico does regularly look to other jurisdictions and how they've interpreted other statutes that are similar to statutes, to the particular statute in Puerto Rico that the Supreme Court is interpreting. If it is not an issue regarding the civil code, in which case it would obviously go to the civil code of Puerto Rico, or if it needed to look elsewhere, it would go to the civil code of Spain. But, Your Honors, I think that – Let me just move you before we run out of time to the non-disclosure agreement, which is also a theory that you proposed to the district court. Why isn't the non-disclosure agreement here invalid as an impermissible non-compete agreement under the Puerto Rican Supreme Court decision in Arthur Young? I think I have a two-part response, Your Honor. The first part, and I think it's very important to underscore this, this argument was waived. In fact, it was waived at the summary judgment level. In page 17 of the district court's order on summary judgment, the district court specifically held that the appellants, that the Rodriguez parties, had waived this argument that the confidentiality clause at issue is akin or should be treated as a non-compete clause with the legal requirements and restrictions that are necessary for non-compete clauses. And it said that they had waived that argument first because they had cited no case law to that effect. I understand, and the record shows what they argued, and we can look at that. But passing over the waiver argument and addressing it on the merits, why isn't this an invalid non-compete agreement under Arthur Young? I think that it is not an invalid non-compete agreement under Arthur Young for two reasons. First, the most basic reason and the obvious reason is that this is not a non-compete agreement, that this is a confidentiality clause. But secondly, and I think this goes to what His Honor wants me to address, the confidentiality clause at issue here does not preclude competition. It does not. It precludes the use and disclosure of TLS confidential information. TLS is not requesting that the appellants not compete in Puerto Rico or elsewhere. TLS is merely requesting that they do not use their confidential information to do so. Now, I will grant you, Your Honor, that there is a scintilla of non-competition there, but I do not think that that raises to the level of a non-compete clause such as the one in Arthur Young. I think that they are separate. I think that they are easily distinguishable as I've just hopefully portrayed. Can we just circle back because this discussion just made me think of one way of putting the question. At least it might be helpful to me. Is there any way that the trade secret that you're claiming is protected is distinguishable from the content of the report? And if so, what is the distinction? Well, my response will be limited to the capital preservation report, Your Honor. I think that's what you're asking about. We also have the U.S. Possession Strategy, which, by the way, is not written anywhere. May I respond, Your Honor? The distinction is the following. There are, I suspect, many ways that that report could be compiled. There are many ways a report such as that could be compiled. There are many ways that a report like that could address the information that it contains or use different guidelines, analysis, and so forth. And so I think that the distinction you're asking about is that the way that that is compiled, the process followed is different. I'm trying to get a sense of would we be able to identify that apart from simply looking at the content of it? In other words, is there any way to violate this trade secret that you're describing by saying something that is not in the report and is the only way to violate it by saying something that is in the report, such that there's going to be a perfect matching between the content of the report and the trade secret? I think that there is a way of violating it, and I think that the way would be to conduct the same process that TLS conducts to prepare the report. What would be the best account of what that process is in a description of it? Will I find it anywhere? I think that you will find it in Mr. Kalambic's testimony at trial, Your Honor. In his direct testimony. And what is the process? Well, other than what I've already mentioned, Your Honor, I can't offer the court much, at least intelligently so. I think Mr. Kalambic does a better job, but I will summarize. In describing that process, does he end up describing the report? No, he describes a process, and then he goes into the report, which are two different things. But I should say that I do think that, and I respectfully disagree with Judge Dyke, I think that the report can be a trade secret in addition to the process, which is what the court concluded. And I think that one of the reasons, if I may just say this to finish, one of the reasons that it concluded that is because there was testimony, uncontested testimony, that this specific report, this type of report, first of all, it was not offered by any other entity. And secondly, TLS has developed it for years. And it went through different edits and different revisions until it perfected the process of that secret use that it gives to the information that it requires, which would not be a trade secret, or the information that it uses to provide the capital preservation report. Your Honor, I know my time is up. I'm happy to answer any questions on waiver. Otherwise, we rest in our brief. Thank you. Thank you, Your Honor. Thank you. Following up briefly on Brother Counsel's arguments, we would like to focus on the CPR. The CPR, our client doesn't know much, but it's definitely not secret. You Google on the Internet the Puerto Rican miracle, and that's a strategy. And you'll find a whole description. It says how you can use Puerto Rico's trade secrets, tax exemption laws. It lays out the whole thing. You look at the client's contracts, and it says, we will create a division for you in TLS and outsource, outsource services. None of those components are trade secrets. And they are not unique. And TLS knows that other people utilize them. Why? Because they enjoin clients from going to other firms and doing those same processes in other firms. So if it was unique to TLS and nobody knew about it, why would they ask a client not to go somewhere else? Why would they penalize a client with a 150 percent penalty? Can I just add? This is just an analogy that occurs to me. You can tell me if it's wrong. But I assume a recipe can be. Yes. Okay, so what's the difference between this and a recipe? Because the recipe uses common ingredients, right? But the end result, nobody knows how the mix is seen. So the end result, you don't know how people got to it. But here, it's readily ascertainable. You can look at the paper, and you can know it. You can read the law, and you know it. So the components are easy. Outsourcing, everybody knows it. And a law that gives people a tax exemption decree. So they cannot monopolize tax exemption laws in Puerto Rico by saying this is a trade secret. I invented a process. What process? Oh, I use consultants, I use lawyers, I use my brain, I type stuff, and I wrote a brief many times. So this book that they have, the CPR, there's 50 revisions of it. Yes, Your Honor, I also have 50 revisions of my brief to this court. It's not a trade secret. As many times as they revise it, and as long as it may be. Now, moving on. That's the trade secret. The court asked about the confidentiality clause. And broader counsel said that the court found I had waived the argument. That's a little bit incorrect. The court found that I waived the argument that when I said that the confidentiality clause prohibits disclosure and use of confidential information, which is everything in the world, the court said because I did not abound sufficiently how enjoining, prohibiting use of confidential information would be enjoining competition that I had waived it. However, there's about 15 pages in my motion for summary judgment explaining how that violates Young and how the application that TLS is giving to that clause is unconscionable, so as to make it void under Arthur Young v. Vega. Thank you. Thank you.